742 P.2d 521

Paula ZAMORA, Individually, and as Custodian and Next Friend of Christina Zamora, Tyrel Zamora and Jesus Zamora, Plaintiff-Appellee,

v.

CDK CONTRACTING COMPANY, INC., Employer, and Wausau Insurance Companies, Employers Insurance of Wausau, Insurer, Defendants-Appellants.

No. 9596.

Court of Appeals of New Mexico.

July 2, 1987.

Certiorari Quashed Sept. 10, 1987.

Mark B. Thompson, III, Douglas R. Vadnais, Douglas G. Schneebeck, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendants-appellants.

Gordon E. Berman, Pickett & Holmes, Las Cruces, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

In this worker's compensation case, the trial court awarded plaintiff a lump-sum

payment in lieu of future weekly payments. The employer, CDK Contracting Co., Inc. (CDK), and its worker's compensation insurer, Wausau Insurance Companies (Wausau), appeal the award, raising two issues: (1) whether plaintiff's request for a lump-sum award is barred as premature when she and her children are receiving maximum compensation benefits; and (2) whether plaintiff made the proper showing below to justify consideration of the request for a lump-sum award by the trial court.

We hold that the action is not premature, but that the evidence presented does not justify a lump-sum award. Accordingly, we reverse.

Orlando Zamora died as a result of an accidental injury on January 3, 1984, which arose out of and in the course of his employment with CDK. The worker's compensation insurance carrier promptly and voluntarily commenced payments of all weekly benefits at the proper rate and continues such payments to date. It has also paid other benefits due on account of the worker's death.

Paula Zamora, on her own behalf as surviving widow, and on behalf of the surviving minor children, initially filed this action for an increase in benefits, claiming failure of the employer to provide a safety device, and also for a lump-sum award of benefits. Defendants moved to dismiss. The parties settled the safety device issue and the trial court entered an order dismissing that claim with prejudice.

Shortly thereafter, the trial court issued a letter opinion holding defendants' contention that plaintiff's "claim" was premature did not provide a proper basis for dismissal; however, it determined the complaint must be dismissed without prejudice for failure to state the necessary allegations for the court to entertain a claim for a lump-sum award. Before entering an order of dismissal, plaintiff obtained leave to amend her complaint. While admitting the accidental death arising out of and in the course of employment, defendants continued to assert as a bar the premature filing section

of the Workmen's Compensation Act, based on their payment of maximum benefits.

Following a hearing, the trial court found in favor of plaintiff and the children, and entered judgment awarding them $90,660.96, which represents the lump-sum present value of all future compensation benefits, discounted at five percent, less weekly benefits paid from time of judgment to satisfaction. The trial court also awarded costs and attorney fees, and retained jurisdiction to approve plaintiff's home purchasing plan and oversee investment to assure use for the children.

### 1. PREMATURE FILING

Defendants' first issue is based upon NMSA 1978, Section 52–1–69, and a number of cases decided thereunder. *E.g., Neumann v. A.S. Horner, Inc.,* 99 N.M. 603, 661 P.2d 503 (Ct.App.1983). Section 52–1–69 provides:

No *claim shall be filed by any workman* who is receiving maximum compensation benefits; provided, however, a workman claiming additional compensation benefits, because of his employer's alleged failure to provide a safety device, may file suit therefor, but in such event only the safety device issue may be determined therein. [Emphasis added.]

Defendants contend they are paying plaintiff maximum compensation benefits and that plaintiff is therefore barred under Section 52–1–69 from claiming a right to compensation. Because lump-sum awards first require a determination of the right to compensation, defendants contend further that plaintiff cannot seek a lump-sum award.

■ We hold that the plain wording of Section 52–1–69 refers only to the "workman." In previous cases discussing the relationship between Section 52–1–69 and NMSA 1978, Section 52–1–30(B), we have not addressed precisely whether the prematurity defense applies to requests for a lump-sum settlement made by dependents of deceased workers, as opposed to requests for a lump-sum made by permanently, totally disabled workers. We do so now

and determine that Section 52–1–69 does not apply to dependents.

We give effect to statutes as written. *Garrison v. Safeway Stores*, 102 N.M. 179, 692 P.2d 1328 (Ct.App.1984). Defendants' citation to cases where the prematurity defense was raised against dependents' requests for a lump-sum settlement and held not to apply on other grounds does not persuade us. Defendants cite to *Arther v. Western Co. of North America*, 88 N.M. 157, 538 P.2d 799 (Ct.App.1975), for the proposition that Section 52–1–69 also applies to suits by dependents of the worker. Contrary to defendants' citation, however, both *Arther* and *Livingston v. Loffland Brothers Co.*, 86 N.M. 375, 524 P.2d 991 (Ct.App.1974), allowed dependents to file a claim.

Section 52–1–69 expressly applies to "any workman." It does not say "workman or dependents." Other provisions of the Act clearly distinguish between workmen and dependents. *See, e.g.*, NMSA 1978, § 52–1–31. "The rights and remedies of the worker * * * are separate and distinct from those of his dependents. A dependent's claim is not derivative of the worker, but is given him by statute independent of the worker. *See generally* A. Larson, *The Law of Workmen's Compensation*, § 64.-10 (1978)." *Pedrazza v. Sid Fleming Contractor, Inc.*, 94 N.M. 59, 63, 607 P.2d 597, 601 (1980). *See* NMSA 1978, § 52–1–16 (Cum.Supp.1985) (defining "workman"), and NMSA 1978, § 52–1–17 (defining "dependents").

Valid reasons exist for the legislature's exclusion of dependents from Section 52–1–69. When the worker is receiving maximum compensation benefits for disability, a claim for benefits, except additional compensation for failure to provide a safety device, is indeed premature. The worker's entitlement to future compensation payments is contingent upon the totality and permanency of his or her disability. § 52–1–30(B). *See Neumann v. A.S. Horner, Inc.* (employee must establish permanency and totality of injury to seek a lump-sum payment). The purpose of Section 52–1–69, to avoid unnecessary litigation where the employer is already paying maximum compensation benefits, *Armijo v. Co-Con Construction Co.*, 92 N.M. 295, 296, 587 P.2d 442, 443 (Ct.App.1978), is served. The worker is barred from making a claim for compensation benefits he is already receiving.

In contrast, the death of a worker raises different concerns. No question of disability, total or permanent, is raised. Other defenses, such as lack of notice, expiration of a statute of limitations, or the death not arising out of the employment, might be raised. Where these defenses are present, however, the employer would not likely commence payment or, if it did, then within a reasonable time the employer would probably investigate and decide whether to continue payments. On the other hand, even if other defenses exist, in the case of a *disabled* worker, incentives exist to continue payments. The goal of rehabilitation, balanced with the costs of trial, encourages a carrier to continue payments and to serve best the purpose of the Act.

We recognize that the result we have reached might discourage payments to dependents. This is not our intent. Continuing payments to dependents should not be discouraged because when a case is resolved, the carrier will receive credit for the amounts paid. Neither do we intend to encourage dependents to seek blanket commutations to lump-sum benefits. Dependents are still bound by the clear legislative preference for periodic payments and the strict guidelines applicable to commutations. Moreover, dependents receiving periodic payments should be reluctant to seek a lump-sum payment when to do so might result in an adverse decision on defenses the employer was willing to hold in abeyance. We finally point out that had the legislature intended for Section 52–1–69 to bar claims by dependents, it could have so stated.

Having decided that Section 52–1–69 does not apply, we must determine whether the trial court had authority under Section 52–1–30(B) to entertain plaintiff's request for a lump-sum award. Section 52–1–30(B) provides the authority to commute bene-

fits. However, the right to the benefits must first be established. *Arther v. Western Co. of N. Am.* The reason is obvious: the trial court cannot commute an award until the amount has been established.

■ This right can be established by: (1) adjudication, *Lamont v. New Mexico Military Institute*, 92 N.M. 804, 595 P.2d 774 (Ct.App.1979); (2) stipulation, *Livingston v. Loffland Brothers Co.*; or (3) admissions of the employer, *Arther v. Western Co. of North America.* In the case of a worker (not decedent), Section 52–1–69 bars a claim to establish such a right while defendants are paying maximum benefits. In our case, we have determined that Section 52–1–69 does not apply to a deceased worker's dependents. Therefore, in order for plaintiff to petition for a commutation, or for the court to have authority to grant any commutation, a right to compensation must first be established.

Defendants have consistently urged that plaintiff's petition for a lump-sum award is premature because her entitlement to benefits has never been established. We disagree. Defendants, by admitting in their answer the allegations that Mr. Zamora was killed in an industrial accident arising out of and in the course of his employment with CDK, and having failed to raise viable defenses, have, in effect, agreed that the right to compensation for the death has been established.

In the present case, defendants continued to pay maximum benefits to decedent's dependents. *See* NMSA 1978, § 52–1–46. Defendants only raised the defense of Section 52–1–69, which we have held does not apply to dependents. We find that defendants' continuous payment of maximum compensation benefits to plaintiff, without contesting plaintiff's right to compensation or raising viable defenses after a reasonable time to investigate, is sufficient to establish plaintiff's right to compensation. *See Arther v. Western Co. of N. Am.*

Therefore, plaintiff could properly petition under Section 52–1–30(B),[1] and the trial court had jurisdiction to consider a commutation. Whether a commutation was proper is our next inquiry.

## 2. PROPRIETY OF LUMP–SUM AWARD

Section 52–1–30(B) allows for a lump-sum payment when the district court determines it is for the "best interests" of the persons entitled to compensation. Because periodic payments are the general rule and lump-sum awards are the exception, *Spidle v. Kerr-McGee Nuclear Corp.*, 96 N.M. 290, 629 P.2d 1219 (1981), the appellate courts of this state have adopted a stringent two-pronged test that must be met before a lump-sum award can be approved. This test, first announced in *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 216, 549 P.2d 628, 631 (Ct.App.1976), requires that a petitioner for a lump-sum award

has the burden of showing that it is in his best interest and that the lack of lump summing would create a manifest hardship where relief is essential to protect claimant and his family from want, privation or to facilitate the production of income or to help in a rehabilitation program.

This test has been adopted by our supreme court, *Spidle v. Kerr-McGee Nuclear Corp.*, and followed in subsequent cases, *see, e.g., Merrifield v. Auto-Chlor System*, 100 N.M. 263, 669 P.2d 739 (Ct.App.1983).

*Spidle* quoted with approval the statement in *Codling* that:

"[E]ach case stands or falls on its own merits. As each request for a lump sum payment is unique, a precise enumeration of what factual ingredients constitute special circumstances is impossible. But in considering the cases which have granted a lump sum award, it becomes apparent that in each a certain factual situation has emerged which, by its quantum and quality of evidence, has convinc-

---

1. We note that at least one prior case has relied on Section 52–1–56(B) as authority for granting a lump-sum award in cases of total permanent disability. *Arther v. Western Co. of N. Am.* This is incorrect. At the time the instant case was filed, Section 52–1–30 applied to lump-sum payments in cases of total permanent disability or death. *Cf.* NMSA 1978, § 52–5–12 (Cum.Supp. 1986).

ingly portrayed the existence of exceptional circumstances."

*Spidle v. Kerr-McGee Nuclear Corp.*, 96 N.M. at 292, 629 P.2d at 1221.

The question presented is whether plaintiff met her burden. Summarizing the trial court's decision, it found that Mr. Zamora died on January 3, 1984, leaving as dependents his wife (plaintiff herein) and three minor children, then aged 5, 4 and 2; that defendants have been and are timely paying all benefits due; that the remaining benefits, discounted to present value, amount to $90,660.96; that plaintiff, aged 26 and unmarried, has a high school education with no additional schooling or training; plaintiff is employed part-time in the nutrition center of a food store where she averages eighteen hours a week and earns approximately $300 monthly; that plaintiff's total monthly income approximates $2,300, of which $960 is derived from compensation benefits and $1,044 from social security; that plaintiff has savings of approximately $12,800, and the children $2,700; plaintiff's current monthly expenses total approximately $1,700, plus any additional for consumer goods (currently about $400 monthly); plaintiff pays rent of $400 monthly; that she seeks a lump-sum award to (1) purchase a home, (2) attend photography school, and (3) provide funds for the future education of her children; the home would be built at a cost of approximately $65,000 and with a down payment of $40,000 from the award, plaintiff would finance the balance through a mortgage with payments of $241.26 a month; the balance of the award would be invested in a government-insured certificate of deposit or money market fund; that the house and investment would be owned by plaintiff and the children in proportion to their respective interests; that since her husband's death, plaintiff has proven to be a responsible and conscientious parent, both in the care of the children and in financial matters; that she has shown an interest and skill in photography; that the worker's compensation benefits will terminate in nine years, at which time the children will have attained the ages of 14, 13 and 11.

Based on those findings, the trial court concluded that it would be in the best interests of plaintiff and her children to receive all future compensation in a lump-sum payment in order "to protect plaintiff and her children from want or privation, to facilitate the production of income and to avoid manifest hardship in the future." The trial court retained jurisdiction to approve plaintiff's home-purchasing plan and to monitor the investment to assure use for the children during their minority.

Based on the trial court's findings and conclusions, and its letter decision that was incorporated as a finding, it is clear that the lump-sum award was predicated on the first two criteria from *Codling;* that is, protection from want or privation and facilitation of the production of income. We are, therefore, not concerned with the third criteria—rehabilitation.

In reviewing the first two criteria, we note that the only evidence offered came from plaintiff and one other witness she produced. Defendants put on no evidence. The detailed findings reflect the relevant portions of plaintiff's proof. Defendants do not claim the evidence does not support the findings of fact; rather, they contend the findings made do not support the conclusions. Thus, the standard of review in this case is not whether substantial evidence supports the findings as made, but, rather, whether those findings will support the conclusions reached. *Cf. Arther v. Western Co. of N. Am.* (holding the trial court's findings were insufficient to support a lump-sum award). We hold they do not.

Before discussing the findings and conclusions, we take this opportunity to clarify the standard of review of a grant or denial of commutation of benefits. The standard of review for assessing the propriety of a lump-sum determination has become somewhat muddled through successive worker's compensation cases. Originally, *Livingston* stated that the findings were amply supported by the evidence, thus using a substantial evidence standard of review. *Arther* buttressed this approach by holding

that the trial court's findings were insufficient to support a lump-sum award. *Accord Codling v. Aztec Well Servicing Co.* In *Spidle,* the supreme court discussed at length the "best interest" standard for awarding lump-sum benefits, as well as the power of the district court to determine the claimant's best interests. Although basing its decision on the evidence below, the supreme court added, "[W]e do not find that the trial court abused its discretion in making the lump-sum award." *Id.,* 96 N.M. at 293, 629 P.2d at 1222. After *Spidle,* this court in *Boughton v. Western Nuclear, Inc.,* 99 N.M. 723, 663 P.2d 382 (Ct.App. 1983), reaffirmed the requirement of presenting evidence showing a need for lump-sum benefits. Upon such a showing, this court added, "the matter is vested in the trial court's discretion whether to grant a lump sum award." *Id.* at 724, 663 P.2d at 383. Although concentrating on factual findings and quantum and quality of evidence, this court in *Merrifield,* 100 N.M. at 264, 669 P.2d at 740, framed the issue in terms of "whether the trial court abused its discretion in awarding a lump-sum payment based on these findings." Finally, in *Sowders v. MFG Drilling Co.,* 103 N.M. 267, 705 P.2d 172 (Ct.App.1985), this court went one step further in applying an "abuse of discretion" standard by adding the requirement of acting contrary to logic and reason.

▮ "[A]n abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances." R. Bowers, *Judicial Discretion of Trial Courts* § 12 at 20 (1931) (footnote omitted). The trial judge does not have unlimited discretion to grant or deny lump-sum awards; rather the awarding of lump-sum benefits is fact-dependent, and each case stands or falls on its own merits. *See, e.g., Spidle v. Kerr-McGee Nuclear Corp.; Sowders v. MFG Drilling Co.* Thus, we read *Spidle* to mean that review for an abuse of discretion is inherent in the substantial evidence standard of review.

▮ Neither the findings nor the proof establish want or privation. In the context used, "want" means "to suffer from the lack of," and "privation" means "an act or instance of depriving * * * lack of what is desired for comfort or needed for existence." Webster's Third New International Dictionary 2574; 1805 (1966). The trial court's own findings reflect $600 left over each month after payment of regular expenses ($2,300 less $1,700). Additionally, the evidence shows that since Mr. Zamora's death, plaintiff has purchased a new vehicle for $11,500, an $850 horse, $450 saddle, $850 in bedroom furniture, $1,045 in living room furniture, $500 in dining room furniture, a camera unit and a VCR. There are no anticipated major expenses and plaintiff and her children have no mental or physical health problems. *Cf. Boughton v. Western Nuclear, Inc.* (child's medical problems necessitated trips out of state for treatment). Indeed, plaintiff, by choice, is able to limit her employment to part-time work so she has more time with her children. She herself testified that "there is nothing about her family's condition which she would consider unusual or exceptional." Plaintiff also testified that the family's current living situation was "adequate for now." Neither the proof nor the findings based thereon will support a conclusion of want or privation.

The rationale for the conclusion that a lump-sum award is necessary to facilitate production of income and to avoid future hardship is found in the trial court's letter decision, made a part of its findings:

It doesn't take much foresight to realize that when the periodic payments end, plaintiff will still have three (3) minor children to support with almost $1,000 less in income and still with only a high school education. She will then be dependent upon social security benefits and her part-time employment. However, if she is awarded a lump sum she can build a home, reduce her monthly outlay for shelter from $400 per month to $241.26 which will not increase as rent inevitably will; she will be building an equity in

real estate; she can better herself by going to photography school, a skill which she likes and is adept at; and will then have an occupation that can improve her income and she will have created a fund for her children's education. Therefore, plaintiff has shown that criteria (1) and (2) have been met and she should be awarded a lump sum payment with the condition that she present to the Court proof that the home construction plan has been accomplished and that the remaining funds appurtenant to the children's interest are properly invested and conserved for the use and benefit of the children. *Spidle v. Kerr-McGee Nuclear Corp.*, 96 N.M. 290 [629 P.2d 1219] (Sup. Ct.); *Boughton v. Western Nuclear, Inc.*, 99 N.M. 723 [663 P.2d 382] (Ct. App.).

Examining first the finding that plaintiff has shown an interest and skill in photography, the proof will not support a conclusion that use of a lump-sum payment for that purpose will facilitate production of income. Unlike *Boughton,* where the widow planned to use between $8,000 and $10,000 to attend nursing school and receive a college degree and specialized training in physical therapy, plaintiff here has no immediate plans to attend school. She has not decided whether to attend photography or secretarial school; has not investigated the schools, the costs or prerequisites for attending. At best, schooling in this case is prospective and speculative. As with want and privation, neither the proof nor the findings based thereon will support a conclusion that future schooling will facilitate the production of income.

Use of the lump-sum award solely to invest in a home and securities must also fail. Aside from the fact that the intent of worker's compensation is to provide a temporary measure of subsistence to prevent claimants from being on the welfare rolls, *Codling,* as opposed to life insurance, plaintiff's plan lacks support in the case law and on the facts.

In *Merrifield,* we reversed a lump-sum award for the deceased worker's children, where the plan called for investment of the proceeds. *See also Arther v. Western Co. of N. Am.* In *Merrifield,* we held that maximizing benefits through investment would require lump-sum awards in almost every case, since it could be argued that any return on investment would facilitate the production of income.

We note that the trial court's conclusion of law that a lump-sum award will "avoid manifest hardship in the future" is not a factor to consider under the *Codling* test. Plaintiff's projected hardship may never materialize. She is not presently destitute, and she can supplement her current savings with additional deposits.

In reviewing a lump-sum award, we must consider not only the fear of dissipation, but also the well-being of the entire worker's compensation system. Actuarial calculations affect the industry's determination of premium charges, the use of funds, the possibility of spouses remarrying, and other factors. The system prefers periodic payments. *See, e.g., Spidle v. Kerr-McGee Nuclear Corp.* We will not upset this delicate scheme by allowing lump-sum awards at will. Generally, a lump sum is awarded only when present, pressing need is shown. No such need was shown here. The spectre of distant deprivation to plaintiff is simply insufficient to warrant a lump-sum award.

While plaintiff's plan has a certain appeal, it is easy to see that approval of that plan would require approval in almost every case. We are committed to holding the line by approving a lump-sum award only when "it becomes apparent * * * a certain factual situation has emerged which * * * has convincingly portrayed the existence of exceptional circumstances." *Codling v. Aztec Well Servicing Co.,* 89 N.M. at 216, 549 P.2d at 631. *See also* 3 A. Larson, *The Law of Workmen's Compensation* § 82.71 at 15–588, –592 (1983); *Arther v. Western Co. of N. Am.* That has not been shown here.

Our holding is buttressed by the most recent version of Section 52–1–30. Section 52–5–12 states an even stronger preference for the periodic payment of benefits. "Lump sum payments * * * shall be al-

**316**

lowed *only* upon agreement of all parties or under special circumstances, as when it can be demonstrated that lump sum payments are *clearly* in the best interests of the parties." (Emphasis added.) Such a policy indicates to us that claiming lump-sum benefits in future cases will be even more difficult, not less. Our holding today accords with this policy.

Reversed.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.