. 798 P.2d 1040

**Cora RIESENECKER,**
**Claimant–Appellee,**

v.

**ARKANSAS BEST FREIGHT**
**SYSTEMS, Self–Insured,**
**Respondent–Appellant.**

**No. 11342.**

Court of Appeals of New Mexico.

May 17, 1990.

Robert Bruce Collins, Albuquerque, for respondent-appellant.

Kenneth R. Wagner, Franchini, Wagner, Oliver, Franchini & Curtis, Albuquerque, for claimant-appellee.

## OPINION

HARTZ, Judge.

Respondent Arkansas Best Freight Systems (employer) appeals from a judgment granting claimant Cora Riesenecker (worker) a lump-sum settlement under the Workmen's Compensation Act, NMSA 1978, Section 52–1–30 (Orig.Pamp.) (replaced by NMSA 1978, Section 52–5–12 (Repl.Pamp. 1987)). We reverse.

Worker is 55 years old. She has worked all of her adult life and has been economically self-sufficient since 1973. During most of her career she worked as a long-haul truck owner and driver. Employer has not challenged on appeal the hearing officer's determination that she was rendered totally permanently disabled by a 1985 accident in the course of her employment with employer. She has no significant source of income other than workers' compensation periodic benefit payments, which expire in 1996.

## THE APPLICABLE LAW

Because this is an appeal from an administrative agency proceeding, we apply whole-record review. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). We consider all the evidence bearing on the decision, favorable and unfavorable, to determine whether there is substantial evidence supporting the result. *See id.*

Determining whether evidence is sufficient to support a judgment first requires

resolving what must be proved—what are the elements of the claim. Thus, we begin with a discussion of the circumstances in which a worker is entitled to a lump sum. The pertinent statutory language is:

> If, upon petition of any party in interest, the court, after hearing, determines in cases of total permanent disability that it is *in the interest of the rehabilitation of the injured workman* or in case of death that it is for the best interests of the persons entitled to compensation, * * * the liability of the employer for compensation may be discharged by the payment of a lump sum * * *. [Emphasis added.]

§ 52–1–30(B).

One possible interpretation of the statutory requirement that a lump-sum benefit be "in the interest of the rehabilitation of the injured workman" is that such a payment should be awarded to a worker requesting it if it may be used to assist in the worker's rehabilitation, regardless of any other factors. (The precise meaning of "rehabilitation" is unnecessary to our result.) That may have been the view of the hearing officer in this case, whose judgment states, "It is in Claimant's rehabilitative best interest to award a lump sum award payment pursuant to Section 52–1–30, NMSA (1978) inasmuch as Claimant has no other means with which to establish a business which will support her after the cessation of period[ic] workers' compensation benefits."

▮ That interpretation, however, fails to give adequate consideration to the underlying purposes of the Workers' Compensation Act. As the New Mexico Supreme Court wrote recently:

> The Worker's [sic] Compensation Act expresses the intention and policy of this state that employees who suffer disablement as a result of injuries causally connected to their work *shall not become dependent upon the welfare programs of the state,* but shall receive some portion of the wages they would have earned, had it not been for the intervening disability. [Emphasis added.]

*Martinez v. Darby Constr. Co.,* 109 N.M. 146, 148, 782 P.2d 904, 906 (1989). If that policy is properly taken into account, a lump-sum payment should not be awarded, despite the possibility that it may assist in the rehabilitation of the worker, when such a payment would create an undue risk that the worker will end up on the welfare rolls well before the periodic payments would have terminated.

Our appellate decisions interpreting the pertinent language of Section 52–1–30—"in the interest of the rehabilitation of the injured workman"—have adopted that view. Before discussing those opinions, we note that most reported opinions concerning the appropriateness of lump-sum benefits have not construed the above-quoted language. Prior to the 1975 amendment to the Workers' Compensation Act, the same statutory standard governed payments of lump sums to injured workers and such payments to the beneficiaries of deceased workers: a lump-sum was authorized if the court determined "in cases of total permanent disability or death that it is for the best interests of the parties entitled to compensation * * *." NMSA 1953, § 59–10–13.5(B) (2d Repl.Vol. 9, pt. 1). The 1975 amendment retained the best-interests test for beneficiaries of a deceased worker, while adopting the rehabilitation-interest standard for an injured worker. Thus, post–1975 cases regarding lump-sum payments to beneficiaries, although supporting the result here, are not directly in point.

Three opinions, however, construe the statutory language at issue in the present case. All note the importance of not granting a lump-sum benefit if it creates a risk that the worker will need to rely on welfare during the time that periodic disability payments would otherwise be available. Upholding the district court's denial of a lump-sum payment to a worker, Judge Sutin wrote in *Lane v. Levi Strauss & Co.,* 92 N.M. 504, 507, 590 P.2d 652, 655 (Ct.App. 1979), " '[T]he purpose of the workmen's compensation law is to prevent one in petitioner's position and his dependents from becoming public charges during the period of disability.' " (Quoting *Prigosin v. In-*

*dustrial Comm'n,* 113 Ariz. 87, 89, 546 P.2d 823, 825 (1976).)

Shortly thereafter, in *Lamont v. New Mexico Military Institute,* 92 N.M. 804, 808–09, 595 P.2d 774, 778–79 (Ct.App.1979), another decision affirming denial of a lump-sum benefit to a worker, Judge Lopez wrote:

> [W]e conclude that the principles governing the payment of lump sum awards under the old statute are still relevant to payment under the amended statute.

Major consideration should be given to the following principle stated in 3 A. Larson, Workmen's Compensation Law, § 82.71 (1976):

> Since compensation is a segment of a total income-insurance system, it ordinarily does its share of the job only if it can be depended on to supply periodic income benefits replacing a portion of lost earnings. If a partially or totally disabled worker gives up these reliable periodic payments in exchange for a large sum of cash immediately in hand, experience has shown that in many cases the lump sum is soon dissipated and the workman is right back where he would have been if workmen's compensation had never existed. One reason for the persistence of this problem is that practically everyone associated with the system has an incentive—at least a highly visible short-term incentive—to resort to lump-summing * * *
>
> The only solution lies in conscientious administration, *with unrelenting insistence that lump-summing be restricted to those exceptional cases* in which it can be demonstrated that the purpose of the Act will best be served by a lump-sum award. [Emphasis in *Lamont.*]

*Padilla v. Frito–Lay, Inc.,* 97 N.M. 354, 639 P.2d 1208 (Ct.App.1981), an opinion by Chief Judge Walters affirming a lump-sum award to a worker, stated the same standard. In particular, the court approved the following language from 3 A. Larson, *Workmen's Compensation Law* Section 82.72, at 15–576 to –577 (now § 82.72(b), at

15–1253 to –1255 (1989)): " '[I]f the claimant needs his compensation benefits to pay his everyday living expenses, it obviously would thwart the purposes of the act to cut them off in order to allow claimant to gamble a lump-sum settlement on a business.' " 97 N.M. at 356, 639 P.2d at 1210.

Although we could reconsider how to interpret Section 52–1–30(B) and overrule our precedents, we believe that such a course would be ill-advised. Principles of *stare decisis* are founded on sound public policy. Former Justice Lewis Powell recently identified three benefits of *stare decisis* to the United States Supreme Court: "1) enhancing the public stature of the Court by demonstrating that it follows precedent and is 'not composed of unelected judges free to write their policy views into law'; 2) providing stability in the law; and 3) simplifying the work of the courts." ABA *Journal* (The Lawyer's Magazine/March 1990), at 45. Those reasons apply equally to courts whose members do not have life tenure. Application of *stare decisis* may be particularly appropriate with respect to statutory interpretation. As Justice Stevens has advised, "[A]fter a statute has been construed, either by [the Supreme] Court or by a consistent course of decision by other federal judges and agencies, it acquires a meaning that should be as clear as if the judicial gloss had been drafted by the Congress itself." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 268, 107 S.Ct. 2332, 2359, 96 L.Ed.2d 185 (1987) (Stevens, J., concurring in part & dissenting in part).

■ Although *stare decisis* should not prevent a court from correcting clear error in prior interpretations of a statute, we are not persuaded that our prior cases have erred in interpreting the statute. Also, we note that the statute we are construing was substantially modified in 1987. Section 52–5–12(A) authorizes lump-sum payments only upon agreement or "under special circumstances, as when it can be demonstrated that lump sum payments are clearly in the best interests of the parties." Under these circumstances, the benefits of *stare decisis* outweigh any future public

benefit that might arise from reconsidering how to interpret Section 52–1–30(B).

## APPLICATION OF THE LAW TO THE FACTS OF THIS CASE

■ We now turn to the facts of this case. Crucial to our holding is that worker has no present means of support other than her worker's compensation benefits. Thus, heeding Larson's warning, quoted in *Padilla,* we should not thwart the purposes of the Workers' Compensation Act by permitting worker " 'to gamble a lump-sum settlement on a business.' " No such concern arose in *Padilla,* because in that case "claimant's living expenses were slightly less than his present income from social security disability payments." 97 N.M. at 356, 639 P.2d at 1210.

Our task in this case, therefore, is to determine whether the evidence before the hearing officer could support a finding that investing the lump sum in worker's proposed business would not be an unacceptable "gamble." The proposed business is a taxi and limousine service for Ruidoso and the nearby airport. Our concern is not with the personal qualities of worker. The record would support a finding by the hearing officer that worker is an energetic individual with sufficient skill to manage the operation of such a service.

The problem is with the economics of the proposed business. Dr. Brian McDonald, Director of the New Mexico Bureau of Business and Economic Research, testified that nationally seventy percent of all start-up businesses fail. Surely most of those businesses fail despite the energy and skill of the owners. Success depends on enough customers paying enough money to sustain the enterprise.

In support of her claim for a lump sum, worker pointed to her acquisition of a certificate of convenience and necessity from the State Corporation Commission. To award such a certificate, the Commission must find that:

(1) the person is fit, willing and able to provide the transportation to be authorized by the certificate and to comply with the Motor Carrier Act and the regulations of the commission; and

(2) the transportation to be provided under the certificate is or will be required by the present or future public convenience and necessity.

NMSA 1978, § 65–2–84(B) (Repl.Pamp. 1981). Frank Smith, the Director of the Transportation Division of the Commission, testified that the issuance of a certificate does not constitute a guarantee of financial success or a warranty that the service will not fail. Indeed, worker provided no financial projections to the Commission and told the Commission that she could not say how much she would make. Her showing of need apparently consisted of a number of short, conclusory letters from Ruidoso residents saying that the service was needed; the letters did not suggest how much the service would be used. The Commission records reflect that at least three other businesses have been awarded certificates of convenience and necessity for similar services in the Ruidoso area. The status of those businesses does not appear in the record in this case, but one must conclude that either worker's business will face viable competition (if any of the other businesses has survived) or the failure rate of such businesses is high.

Worker added nothing of substance at the hearing in this case. She testified that she did not expect to make money the first year and admitted that she did not know if she will make money at all. Glen Johnson, a successful air-conditioning and heating contractor in San Antonio, Texas, who had been a long-time friend of worker, testified that if worker invested in the venture, he would be willing to invest $20,000 to $25,-000. Yet he stated on cross-examination that he had not made a commitment to worker for such an investment "based on today's economy there." He stated that he did not know if the business would make a profit in the first year of operation, but thought that it was "a going thing." He had not reached a final conclusion on the feasibility of the proposed service.

What is totally absent from the record is any projection or estimate of income from

the business. Who would use the service? How often? How much would they pay? Would the payment from these customers suffice to cover the expenses of the business, including a salary adequate to support worker? Worker had no written business plan. She had not consulted an economist or business planner, nor any other expert to analyze the probable success or failure of her proposed venture. Because Ruidoso's economy and the proposed business would be dependent on tourism, income projections for the business would need to be founded on reasonable projections concerning tourism in the area. None were offered. We note that a little more than six months prior to the hearing in this case worker had written to the State Corporation Commission to request suspension of her certificate for six months because of the poor economic conditions in Ruidoso, although she explained at the hearing in this case that she meant only that her personal economic situation was bad. What worker failed to provide was not just expert testimony, but any evidence, that the proposed business would earn sufficient funds to keep her off the welfare roll.

Particularly telling is the hearing officer's finding that worker had "no other means [besides a lump-sum payment] with which to establish a business." Apparently, no bank would loan the necessary funds. No bank, or even an objective venture capitalist, would invest in such a project without more groundwork, at least a realistic financial projection. The Workers' Compensation Division should be at least as conservative as traditional financial institutions in investing lump-sum payments when the worker is without other means of support. The record does not support a finding that the proposed business would not be a "gamble." The hearing officer could reach that conclusion only by impermissible speculation.

## CONCLUSION

Therefore, we reverse the award of a lump-sum payment. We have not been asked to decide whether worker can pursue her request for a lump-sum payment in a future hearing.

IT IS SO ORDERED.

MINZNER, J., concurs.

APODACA, J., dissents.

APODACA, Judge (dissenting).

I respectfully dissent. I cannot concur with the majority since, in my judgment, it inappropriately weighs the evidence and substitutes its determination for that of the fact finder.

The lump-sum award in this appeal was based on the workers' compensation judge's (judge) conclusion that it was in worker's "rehabilitative best interests" to make such an award under the Workmen's Compensation Act (the Act), NMSA 1978, Section 52–1–30 (Orig.Pamp.) (replaced by NMSA 1978, Section 52–5–12 (Repl.Pamp. 1987)). Employer contends on appeal that the judge's lump-sum determination did not meet the two-prong test first formulated in *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 549 P.2d 628 (Ct.App.1976), and clarified and applied by this court in *Zamora v. CDK Contracting Co.*, 106 N.M. 309, 742 P.2d 521 (Ct.App.1987). Mindful that periodic payments under a workers' compensation scheme are the rule and that "lump summing" is a departure from that rule, I nonetheless would hold that the facts of this appeal constitute exceptional circumstances as required by the case law for granting a lump-sum award. I would therefore affirm the judge's award.

In determining whether the judge erred in granting the lump-sum award, we must apply the standard of review aptly stated in *Zamora*. There, we held that, in reviewing a lump-sum award, we must determine whether the making of such an award was an abuse of discretion by deciding if substantial evidence supported the award. Confronted by what it perceived as a "somewhat muddled" standard applied in various workers' compensation cases, *Zamora* concluded, after analyzing the holding in those cases, that "[t]he trial judge does not have unlimited discretion to grant or deny lump-sum awards; rather the

awarding of lump-sum benefits is fact-dependent, and each case stands or falls on its own merits." *Id.* at 314, 742 P.2d at 526. *Zamora* thus concluded that any review by this court for an abuse of discretion "is inherent in the substantial evidence standard of review." *Id.* at 314, 742 P.2d at 526.

In this appeal, which originated from an administrative agency decision, we must supplement use of the *Zamora* standard by also applying the whole record review, instead of the traditional substantial evidence standard. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). Under this standard, the reviewing court reviews all the evidence bearing on the decision, favorable and unfavorable, in order to determine if there is substantial evidence supporting the result. *Id.* The trier of fact's findings are not disturbed if supported by substantial evidence acceptable to a reasonable mind as relevant and adequate to support the conclusion reached. *Martinez v. Darby Constr. Co.*, 109 N.M. 146, 782 P.2d 904 (1989); *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 756 P.2d 558 (1988). Using the whole record standard of review, I conclude there was substantial evidence to support the judge's decision and thus would hold that the judge did not abuse his discretion in ordering the lump-sum award.

To find substantial evidence in the whole record supporting an administrative decision, this court must be satisfied that the evidence demonstrates the reasonableness of the decision. *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n.* No part of the evidence can be exclusively relied upon if it is unreasonable to do so. *Id.* On appeal, this court does not weigh the evidence, for that is the task of the fact finder. *Santa Teresa Concerned Citizens Ass'n, Inc. v. City of Sunland Park*, Ct.App. No. 10,115 (Filed November 20, 1989). In *Santa Teresa*, Judge Hartz, also writing for this court, was particularly reluctant then to second guess an expert tribunal because of its first-hand knowledge of the facts and the value of its experience in evaluating the expertise and credibility of the witnesses appearing before it. These are the very same actions he apparently has no reluctance taking in this appeal. The dispositive precedent for our review is that when we find sufficient credible evidence for a reasonable mind to accept as adequate support for the agency's conclusion, that decision will not be disturbed. *Id.; see also Martinez v. Darby Constr. Co.; National Council on Compensation Ins. v. New Mexico State Corp. Comm'n.*

I submit that the three cases relied on by the majority as establishing precedent for this appeal *uphold* an agency's discretion and ultimate decision to grant or deny lump-sum awards, as well as our function, as a reviewing court, in affirming that decision. The majority devotes a considerable portion of its opinion to a discussion of *stare decisis* principles, concluding that, in deference to those traditional principles, it will not "overrule" precedents. In dissenting and proposing affirmance, I do not suggest that we overrule our existing case law. Instead, I have simply applied the identical case law as the majority, only to reach a different result that I believe finds ample support in the evidence.

The record in this appeal indicates to me that there was substantial evidence supporting the judge's conclusion that it was in claimant's *rehabilitative* best interests to grant a lump-sum award under the Act. Each request for a lump-sum payment is unique and each case stands or falls on its own merits. *Codling v. Aztec Well Servicing Co.* The quantum and quality of the evidence should portray the existence of "exceptional circumstances." *Id. Codling* developed a two-pronged test for the finding of exceptional circumstances. Worker must show (1) that a lump-sum payment is in his/her best interests, and (2) that denial of a lump-sum award would create a manifest hardship. *Id.* To define "hardship", *Codling* used three criteria: a lump-sum award is justified where such relief is essential to (1) protect the worker from want, privation *or* (2) facilitate the production of income *or* (3) help in a *rehabilitation pro-*

*gram. Id.* Proof under any *one* of the criteria is sufficient to support a lump-sum award.

In this appeal, the judge based the lump-sum award on the worker's "rehabilitative best interests." The evidence showed that worker was hard working and economically independent. Both the doctor and the physical therapist testified that worker was not a malingerer and was quite troubled by being inactive. The physical therapist's report noted worker's inability to sustain any job for any significant length of time without frequent rest intervals. The therapist recommended some type of self-employment where worker could control her hours, rest periods, and productivity level. The doctor concurred with this recommendation.

Because of worker's unique job restrictions and the limitations of the area's labor market, the rehabilitation services organization assisting her rehabilitative efforts decided to close her file. That organization was unable to help worker in pursuing meaningful employment. Employer never offered worker a job. The testimony showed there were no job openings in Ruidoso for the type of work worker could perform and *sustain* for short periods of time. She was unemployed due to her total and permanent disability, with no realistic employment prospects. Worker will be unemployed and economically dependent while receiving the periodic payments. In disability situations where job sustainment is an important factor, self-employment may be the *only* means to assist the rehabilitation of a permanently and totally disabled worker.

The evidence indicated worker's sole source of support was her workers' compensation payments. These payments will end in 1996. At that time, worker will be 61 years old. She will have no business or profession that will economically sustain her. Contrary to the Act's intent, worker could become a public charge at that time, a dire consequence the majority, in its opinion, states it is attempting to prevent. Instead, the judge's decision could promote worker's "rehabilitative program" by allowing her to lead a full and productive life.

Apparently, the basis for the majority's reversal of the judge's decision is the testimony of an expert regarding the proposed business' success. With a record replete of evidence supporting the judge's findings, I consider it unreasonable to rely exclusively on the expert's testimony to overrule a decision arrived at after lengthy hearings and presentation of evidence. *See National Council on Compensation Ins. v. New Mexico State Corp. Comm'n.* The majority concludes that the judge erred in disregarding allegedly uncontroverted evidence of probable business failure, as well as dissipation of the lump-sum award. The evidence relied on by the majority for this conclusion is the testimony of the Director of the New Mexico Bureau of Business and Economic Research. He testified that worker had a very low possibility of success for the contemplated business venture, that the venture would probably fail within a few years, and that she would lose whatever money she invested in the enterprise.

I consider it important that during cross-examination, the expert witness admitted that the economic condition of Ruidoso was comparable to the rest of the state—no better, no worse. He also conceded he did not know various facts regarding the necessity for a taxi service in the area, including the distance from the airport to downtown Ruidoso, the availability of rental cars in the community, the number of flights arriving and departing from the Ruidoso airport, or whether local service businesses provided transportation to their patrons. I also disagree that employer's expert's testimony was uncontroverted. There was evidence to the contrary. After a public hearing where there was extensive evidence of local need and support, the State Corporation Commission determined that a "need" did exist for a taxi/limo service and issued a Certificate of Public Convenience and Necessity. Pursuant to Rule 11–301 of the New Mexico Rules of Evidence, there is a presumption of need as a result of the issuance of a certificate. Administrative decisions are entitled to a presumption of correctness when sup-

ported by substantial evidence. *Frazier v. New Mexico Dep't of Human Services*, 98 N.M. 98, 645 P.2d 454 (Ct.App.1982). In my view, the issuance of the certificate controverted employer's evidence regarding the possible failure of worker's proposed business.

However, even if obtainment of the certificate were to be deemed insufficient to controvert the expert's testimony, I do not interpret *Codling*'s two-prong test as requiring proof of business profitability before a lump-sum award is justified. In my opinion, the majority has developed a new prong to the test—the showing of no unreasonable risk. The statute and the case law addressing lump-sum awards either are silent on the matter of profitability or strongly suggest that such a showing is unnecessary. *See* § 52–1–30; *Merrifield v. Auto–Chlor Sys. of Albuquerque*, 100 N.M. 263, 669 P.2d 739 (Ct.App.1983); *Padilla v. Frito–Lay, Inc.*, 97 N.M. 354, 639 P.2d 1208 (Ct.App.1981).

*Padilla* rejected the notion that the Act mandated expert testimony to support a worker's expectation of profitability. In *Merrifield*, this court held that facilitation of income did not mean maximizing the return on the investment. A business's projected profitability is not the criterion required for granting lump-sum awards for start-up business costs. Otherwise, lump-sum benefits would never be granted for this purpose. In a free capitalistic economic system, no one can be certain of success.

I am mindful of the risks inherent in affirming the lump-sum award in this appeal. This risk may be greater than existed in *Padilla*, where, as the majority has pointed out correctly, the worker's living expenses were slightly less than his income from social security disability payments. Here, the worker's sole income was her periodic workers' compensation payments. I am likewise aware of the admonishment found in *Padilla:*

[I]f the claimant needs his compensation benefits to pay his everyday living expenses, it obviously would thwart the purposes of the act to cut them off in order to allow claimant to gamble a lump-sum settlement on a business.

*Id.* at 356, 639 P.2d at 1210 (citing 3 Larson, *Workmen's Compensation Law* 15–576, –577 § 82.72 (1989)). In this connection, I am also cognizant that worker testified she did not anticipate experiencing a profit during the first year of operation. Nevertheless, it would be reasonably anticipated that she would elect to draw a salary during that first year and that this would be an expense to the business, thus precluding a profit during that period.

In construing a particular statute, a reviewing court's central concern is to determine the intent of the legislature. *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 749 P.2d 1111 (1988); *Smith Mach. Corp. v. Hesston, Inc.*, 102 N.M. 245, 694 P.2d 501 (1985), *cert. denied*, —— U.S. ——, 110 S.Ct. 1119, 107 L.Ed.2d 1026 (1990). In making this determination, the court will look primarily to the language used in the statute. *See First Nat'l Bank v. Southwest Yacht & Marine Supply Corp.*, 101 N.M. 431, 684 P.2d 517 (1984). We should not add a requirement that is not provided for in the statute, *Amerada Hess Corp. v. Adee*, 106 N.M. 422, 744 P.2d 550 (Ct.App. 1987), nor read language into it that is not there. *State ex rel. Klineline v. Blackhurst.* Additionally, an act must be read in its entirety and each part must be construed in connection with every other part to produce a harmonious whole. *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 703 P.2d 169 (1985).

It thus appears to me that the majority is not only adding a new requirement to Section 52–1–30 not foreseen by the legislature, but is also not considering the Act as a whole. *See New Mexico Hosp. Ass'n v. A.T. & S.F. Memorial Hospitals, Inc.*, 105 N.M. 508, 734 P.2d 748 (1987). Even though the Act's intent is to prevent workers from becoming dependent upon the welfare system, *Martinez v. Darby Constr. Co.*, and periodic payments are the favored form of compensation, *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 590 P.2d 652 (Ct.App.1979), the legislature explicitly allowed lump-sum payments under the Act, if such awards were found to be in the work-

er's rehabilitative best interests. The majority's opinion today nullifies this allowance. If the facts of this appeal fail to sustain the judge's determination of exceptional circumstances, it is difficult to imagine a hypothetical set of facts that would offer such support.

It is fundamental that a reviewing court will not weigh the evidence. *Marez v. Kerr–McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App.1978). Instead, the court must consider the evidence and inferences that reasonably may be drawn from such evidence in the light most favorable to support the trial court's findings. *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.1977).

In *National Council*, our supreme court stated:

> To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency.

*Id.* 107 N.M. at 282, 756 P.2d at 562. Additionally, in *Martinez*, our supreme court held that an appellate court, in reviewing an agency's decision under whole record review, must conduct "an independent examination of the entire record to determine whether substantial evidence exists to support the reasonableness of the [judge's] decision to award benefits to the claimant." *Martinez v. Darby Constr. Co.*, 109 N.M. at 148, 782 P.2d at 906.

It is important to bear in mind that *Martinez* reversed this court's decision, concluding we had misapplied whole record review. The court held that we had substituted our determination for that of the agency and that substantial evidence existed to support the reasonableness of the agency's award. I maintain that the majority, in not heeding the admonishment in

*Martinez*, has once again substituted its judgment for that of the trier of fact in reweighing the evidence.

Because I would affirm, it is necessary that I address employer's reliance on this court's holding in *Zamora*. Relying on our holding there, employer urges that we reverse the judge's lump-sum award, claiming the award was based on the spectre of distant deprivation. In *Zamora*, the plaintiff was a young, employed widow of a deceased employee, with three young children. She wanted the lump-sum award to enroll in photography school, to purchase a home and to make investments for the future education of her children. She had several sources of income that exceeded her expenses. The plaintiff, who was not disabled, testified that her present situation was adequate and that there were no anticipated major expenses or health costs. This court in *Zamora* concluded that the plaintiff's projected hardships might never materialize and reversed the trial court's lump-sum award.

*Zamora*'s holding was premised on the following language:

> Based on the trial court's findings and conclusions, and its letter decision that was incorporated as a finding, it is clear that the lump-sum award was predicated on the first two criteria from *Codling*; that is, protection from want or privation and facilitation of the production of income. We are, therefore, not concerned with the third criteria—rehabilitation.

*Id.* 106 N.M. at 313, 742 P.2d at 525.

In this appeal, on the other hand, the judge based his lump-sum award on the worker's "rehabilitative best interests." I interpret the judge's findings and conclusions as focusing on the third *Codling* criteria, not on the first two, as was clearly the case in *Zamora*. I thus consider *Zamora* not only factually distinguishable, but that its holding in denying a lump-sum award was based only on the first two of the *Codling* criteria, not on the third, which formed the basis for the judge's award in this appeal.

The claimant here was the totally and permanently *disabled employee*, not an

employee's widow who was *able to work.* She was unemployed, with no realistic employment prospects. The periodic benefits were her only source of income, and she had no savings. Worker had no dependents. Her disability required present and future medical care. I believe worker's future economic privation was not prospective and speculative but presently ascertainable. In contrast to *Zamora,* in which this court held that a lump sum was to be awarded only when a present, pressing need was shown, and no such need was shown to exist there, the facts of this appeal indicate there was a present, pressing need for worker to commence a business of her own for rehabilitative reasons.

*Padilla* is factually more similar to this appeal than *Zamora.* In *Padilla,* the claimant had suffered almost complete blindness as a result of a work-related injury. The claimant was found to be permanently and totally disabled. He requested a lump-sum settlement in order to purchase a laundromat. As in this appeal, the employer raised questions regarding the profitability of the venture. The claimant had never owned or managed a business and the only evidence supporting the potential success of the business was the self-interest testimony of the laundromat owner. Yet, the court held it would be in the claimant's "best interests" to allow a lump-sum settlement so that he could purchase the laundromat.

In *Padilla,* the court found that the "best interests" of the claimant was not only limited to producing income for himself but also to help in his full rehabilitation. Rehabilitation entails restoring a disabled worker to his greatest physical, mental, social and vocational potential. *Id.* *Padilla* acknowledged possible tragedies, such as alcohol and drug abuse, that can accompany inactivity. This court in *Padilla* concluded that the "best interests" of the claimant could be the mental and emotional stability engendered in the personal satisfaction of being self-employed and capable of earning one's living. I conclude that, in this appeal, worker's rehabilitation could be enhanced and promoted if she were allowed to be self-employed and earn her own living.

From the contrasting fact patterns, different policy concerns emerge respectively in *Padilla, Zamora* and in this appeal. In *Zamora,* the court was interested in preventing the young widow and the three young children from becoming public charges. In *Padilla,* we recognized other possible "privations" besides economic needs. In this appeal, the judge apparently placed emphasis in the worker's full rehabilitation. I am unwilling to substitute my judgment for that of the judge. Neither am I willing to hold unequivocally that the award was not supported by substantial evidence and that the judge consequently abused his discretion, as required by the case law before such a determination is reversed.

In summary, applying the applicable standards and criteria, I would conclude that there was substantial evidence supporting the judge's determination of exceptional circumstances justifying a lump-sum award. Consequently, I would affirm.